IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ADA M. FREESE** | ) | Case No. 1:08-CV-1070 |
| | ) | |
| Plaintiff | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| vs. | ) | |
| | ) | |
| **CONTINENTAL AIRLINES, INC.** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant | ) | |

This matter is before the Court on Defendant's Motion for Summary Judgment (ECF # 34). For the reasons that follow, Defendant's motion is granted in part and denied in part.

### PROCEDURAL AND FACTUAL BACKGROUND[1]

Plaintiff Ada Freese filed this Complaint on March 28, 2008, alleging that while a passenger on Continental Flight 2243 from Cleveland to Atlanta on March 30, 2007, she was injured when a flight attendant employed by Defendant Continental Airlines, Inc. "Continental", spilled a cup of scalding hot water onto her lap. (ECF #1, Ex. 1 at ¶¶ 7-9). After the hot water was spilled in Plaintiff's lap, Plaintiff alleges the flight attendant ignored Plaintiff's distress, and only offered a cup of ice to comfort the burn instead of burn medication. (*Id.*, at 10-11, 13). Additionally, instead of having trained medical personnel meet Plaintiff at the arrival gate,

---

[1] The factual summary is based upon the parties' statements of fact. Those material facts that are controversial and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to the non-moving party.

firemen arrived, and Plaintiff's injuries were exacerbated by failure to receive immediate medical attention. (*Id.*, at ¶¶ 14, 17-19). Plaintiff was diagnosed with second and third-degree burns and spent over two weeks in the hospital, four weeks in home health care, continues to be treated for the burns, and has missed a substantial amount of work. (*Id.*, at ¶ 20). Plaintiff enumerates three causes of action: negligence, negligent failure to train, and negligence *per se*. (*Id.*, at ¶¶ 22-38).

Plaintiff's first claim of negligence is based on the common carrier relationship Continental allegedly had with Plaintiff and the duty of care Continental owes to its passengers. (*Id.*, at ¶ 23). Plaintiff alleges that not only was the flight attendant negligent, but upon landing, Continental employees negligently failed to ensure qualified medical personnel were available and failed to render appropriate assistance that further exacerbated her injuries. (*Id.*, at ¶ 25). Plaintiff's second claim, negligent failure to train, states that Continental's common carrier relationship with Plaintiff required that Continental's employees be trained in handling hot liquids in the air, and in helping injured passengers disembark the airplane. (*Id.* at ¶¶ 29-31). Plaintiff's third claim, negligence *per se*, states that Continental failed to comply with 14 C.F.R. 121.805 regarding training employees for in-flight medical emergencies. (*Id.*, at ¶ 36-38).

On April, 29, 2008, Continental answered the Complaint and denied the flight attendant's actions of spilling hot water in Plaintiff's lap and ignoring her distress. (ECF #5, at ¶¶ 8-11). Continental further elaborates on the circumstances surrounding the incident by acknowledging it was the flight attendant on Flight 2243, not the pilot, who requested medical help if there was a doctor on board, and by clarifying the flight attendant gave Plaintiff an air-sickness bag full of ice, not a cup of ice. (*Id.*, at 13,15) Additionally, Continental denies that Plaintiff was met by

firemen on the gateway and that the gate agent did not convey the emergent nature of the situation so the sky cap service took over fifteen minutes to arrive. (*Id.*, at 17-19). Continental asserted eleven affirmative defenses including third party fault stating "Plaintiff's claims are barred in whole or at least in part by negligence of as yet unidentified third-parties." (ECF #5, Affirmative Defenses at ¶¶ 1- 11).

Plaintiff and Continental spent 11 months working through the discovery process. Continental produced the documents and witnesses requested by Plaintiff as if the witnesses and documents were controlled by Continental. One of the witnesses produced was the flight attendant Ms. Tammi Clements.(ECF #11; Ex.3 & ECF #12; Ex 2). Plaintiff deposed Ms. Clements and other individuals produced by Continental on February 6, 2009. (ECF # 22).

Documents Continental produced during the discovery process were: 1) "Flight Information" document identifying the airline as "CO Express-Express Jet"; 2) job applications of flight attendant, Ms. Clements, to work first at "Continental Express, Inc." and more recently at "ExpressJet Airlines, Inc."; 3) correspondence from "ExpressJet" to Clements; 4) Clements May 12, 2007 letter of resignation to "Express Jet [sic] Airlines"; 5) pages from ExpressJet In-flight Manual; 6) training material stating ExpressJet on each page; and 7) customer incident reports concerning burns on "Continental Express, Operated by ExpressJet Airlines, Inc."(ECF #34, p. 3-4, Exhibit 2). Finally, in arranging the depositions of Plaintiff, her son, and Ms. Clements, Continental's counsel discussed coordinating a "date for the deposition of our flight attendant." (ECF #11, Exhibit 3) During her deposition, the flight attendant, Ms. Clements, stated that she was employed by ExpressJet. (ECF # 34, p. 4, Exhibit 3).

3

Continental filed its Motion for Summary Judgment alleging for the first time that it was an improper party to the suit. Continental states that Continental Flight 2243 was not operated by Continental Airlines, Inc., but instead was operated by ExpressJet Airlines, Inc., d/b/a/ Continental Express (ExpressJet). (ECF # 34, p. 1).

In its motion for summary judgment, Continental states that ExpressJet is a wholly-owned subsidiary of ExpressJet Holdings, Inc. and operates under a capacity purchase agreement with Continental. Continental Airlines, Inc., Annual Report (Form 10-K), at 7 (Feb. 20, 2008). Under the capacity purchase agreement, "the marketing carrier [Continental] purchases all seats on covered flights and is responsible for all scheduling, pricing and seat inventories." *Id*. Continental is "entitled to all revenue associated with [covered] flights and [is] responsible for all revenue-related expenses, including commissions, reservations, catering and passenger ticket processing expenses." *Id.* at 8. Continental assumes the risk of revenue volatility with ExpressJet, and can withdraw up to 25% of the aircraft covered under the contract, although Continental still remains liable for "all obligations under the head leases covering the … withdrawn aircraft." *Id*. Additionally, Continental can terminate the contract with ExpressJet "without notice or opportunity to cure if [Continental] determine[s] that there is a material safety concern with ExpressJet's operations." *Id.* at 9.

After Continental filed its motion for summary judgment, Plaintiff moved to file an amended complaint to name a new party defendant, ExpressJet. (ECF #36). Plaintiff's motion to amend was denied because the statute of limitations against ExpressJet had expired, and did not relate back to the original date for filing of the complaint.

**STANDARD OF REVIEW**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could

find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Fed. R. Civ. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

6

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id*. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## DISCUSSION

Continental moves for summary judgment on the basis that it is not the correct party to this suit because it did not control or operate the flight on which Plaintiff was injured; did not

play any role in the incident; and, did not train the flight attendant.  Plaintiff's allegations of negligence, negligent failure to train, and negligence *per se* all arise from the single incident on Continental Flight 2243 where hot water was spilled onto Plaintiff's lap by a flight attendant. (Compl. ¶ 8-11.)  The affidavit of Edna Smith, Litigation Manager for Continental, asserts that Continental was not responsible for the direct operation of the aircraft. (Smith Aff. ¶ 3-6.) The operator of Flight 2243 was ExpressJet. (Smith Aff. ¶ 4.)  The flight attendant, the alleged tortfeasor, was an ExpressJet employee who was paid, trained, and controlled by ExpressJet. (Clements Dep. Pgs 18, 24-5, 38-9).  Continental asserts that Continental and ExpressJet are two entirely different companies and that Continental has no control or supervisory role over ExpressJet. (Smith Aff. ¶¶1-6).  Improperly named defendants, who have no responsibility for the injuries alleged, should be dismissed from an action.  See *Moherman v. Nickels*, 45 N.E.2d 405, 407-08 (Ohio 1942) (improperly named defendant dismissed from case); *Kosa v. Pruchinsky*, 612 N.E.2d 1291 (Ohio Ct. App. 1992) (plaintiff required to dismiss improperly named defendant and add actual tortfeasor).  Thus, as the only evidence in the record indicates that Continental played no role in Plaintiff's injury on board Flight 2243, Continental would be entitled to summary judgment on Plaintiff's Complaint.

      What the parties fail to mention, however, in their briefings on this motion is Plaintiff's assertion that the gate agent exacerbated Plaintiff's injuries by failing to ensure qualified medical personnel were waiting when the plane landed and by failing to ensure she was rushed to a hospital, instead relying on a skycap.  (Compl. ¶25(f),(g).)  There are not enough facts (nor indeed any) in the record to support a conclusion that the gate agent was not a Continental

8

employee.² As such, a genuine issue of material fact remains as to the employer of the gate agent. If the gate agent is a Continental employee, it would be possible that Continental could be liable for the exacerbation of the alleged injuries sustained by Plaintiff. Therefore, summary judgment is inappropriate as to Continental's liability for the gate agent's purported negligence in exacerbating the injuries sustained by Plaintiff.

In an effort to avoid summary judgment, Plaintiff counters that Continental is a proper defendant based upon its status as a common carrier. Specifically, Plaintiff contends that as a common carrier, Continental had a non-delegable duty to provide safe passage for paying passengers. Plaintiff also argues that under the principles of equitable estoppel, Continental cannot deny its responsibility for the negligence of ExpressJet.

With respect to Plaintiff's commercial carrier arguments, commercial airlines are almost always found to be common carriers, and it is well-settled Ohio law that common carriers "[owe] a duty to exercise the highest degree of care for the safety of its paying passengers." *Khourey v. American Airlines, Inc.*, 164 N.E.2d 402, 406 (Ohio 1960) (American Airlines is a common carrier); *see also Moon v. Northwest Airlines*, No. 99AP-1104, 2000 Ohio App. LEXIS 2503, at *12-13 (10th Dist.) (Northwest Airlines is a common carrier); *Bodley v. U.S. Air, Inc.*, No. 97APE03-430, 1997 Ohio App. LEXIS 5608, at *4 (10th Dist.) (U.S. Airways is a common carrier); *Earley v. United Airlines*, No. 2:05-CV-0835, 2006 U.S. Dist. LEXIS 70439, at *19 (S.D. Ohio) (United is a common carrier). In addition, Plaintiff cites *Tinkham v. Groveport-*

---

² This issue is never explicitly addressed by either party in their memorandums opposing or supporting summary judgment, nor in any submitted evidence. There is passing mention of Continental's responsibility for "passenger ticket processing expenses" in the SEC 10K Filing (ECF 35, pg 8) that could include boarding and disembarkation of passengers, but perhaps not; it is never explained.

9

*Madison Local School Dist.*, "[t[he carrier's obligation is to carry the passenger safely and properly and to treat him respectfully, and if the performance of this duty is intrusted to an agent or servant the carrier is held to a strict responsibility for the assaults and insults of such servants." 602 N.E.2d 256, 259 (10th Dist. 1991).

Indeed, Continental, as Plaintiff points out, admits its common carrier status. (ECF # 23,28). Continental, however, was not Plaintiff's common carrier, ExpressJet was. ExpressJet was the common carrier in this instance because ExpressJet operated Flight 2243 and exercised control over the passengers; Continental never assumed such a responsibility. "The carrier-passenger relationship exists when the parties have created an express or implied contract and the carrier can practically exercise care for the passenger's protection." *Gorham v. Regional Transit Auth.*, No. 50108, 1986 Ohio App. LEXIS 5677, at *3 (8th Dist.); *see also Cincinnati Traction Co. v. Holzenkamp*, 78 N.E. 529, 530 (Ohio 1906) (holding also that passenger must be "under the care of the carrier" in order for the carrier-passenger relationship to exist); *Bodley*, 1997 Ohio App. LEXIS 5608, at *4-5 (holding that passenger was under airline control when she handed the gate agent the ticket and entered the jetway). The fact that Plaintiff's son purchased her ticket from the Continental website does not create a direct relationship with Continental when the screen shows that the flight purchased by Plaintiff's son was operated by ExpressJet. . Mr. Freese avers that he never noticed anything that would indicate the flight was not on a Continental-operated plane. (K. Freese Aff. ¶ 4). Despite the fact that Mr. Freese may not remember seeing it, Continental lists under the flight description which airline operates the flight. (Screenshot, ECF 38 Ex. A; Smith Aff. Pg 2.) Kevin Freese, as plaintiff's agent, was put on notice that ExpressJet operated Flight 2243 when he bought the tickets. At no point beyond

perhaps the flight gate could Continental exercise practical control over the passengers. The flight crew was comprised of ExpressJet employees, they were trained by ExpressJet, and ExpressJet operated the plane. The common carrier status of Continental is irrelevant because Continental was not acting as a common carrier for *Plaintiff*.

In her equitable estoppel argument, Plaintiff claims that Continental's conduct and factual misrepresentations caused her to forgo adding ExpressJet as a defendant in a timely manner, thus Continental should be equitably estopped from invoking the statute of limitations. (ECF #35, at 7).[3] "The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice. It is available only in defense of a legal or equitable right or claim made in good faith and should not be used to up hold crime, fraud, or injustice." *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, N.E. 2d 268. The party claiming equitable estoppel must have relied on its adversary "in such a manner as to change his position for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading." *Ohio State Bd. of Pharm. v. Frantz*, 51 Ohio St. 3d 143, 145, 555 N.E.2d 630.

The claimant must prove the following four elements in order to state a claim of equitable estoppel: 1) the opposing party made a factual misrepresentation; 2) the misrepresentation was misleading; 3) the misrepresentation "induced actual reliance which was reasonable and in good

---

[3] Continental claims that since the statute of limitations has run against ExpressJet, the primary tortfeasor, precluding its joinder in this action, Plaintiff may not hold Continental liable. *See Comer v. Risko*, 106 Ohio St. 3d 185 (2005) In *Comer*, the court held that any claim for secondary liability against the principal hospital fails if the statute of limitations expired on a claim against its agent physician who was primarily negligent.

faith;" and 4) "which caused detriment to the relying party." *Doe v. Blue Cross/Blue Shield of Ohio*, 79 Ohio App.3d 369, 379, 607 N.E.2d 492 (1992).

Plaintiff claims that Continental deliberately adopted a defense strategy designed to mislead the Plaintiff, to lull them into a belief that Continental did in fact accept responsibility for the manner in which ExpressJet operated this flight. Plaintiff alleges that for at least eleven months, Continental factually misrepresented, by its actions and words, that it was the proper party to the suit until after the statute of limitations had expired, which allowed ExpressJet to "'hid[e] in the bushes' so to speak and [then] finally strike the plaintiff from ambush." *See Travelers Indem. Co. v. U.S.*, 382 F.2d 103, at 106 (10th Cir. 1967).

During the discovery process Continental provided Plaintiff with documents including, an information sheet on Flight 2243, employment applications and ExpressJet records regarding the flight attendant, Ms. Clements, working on Flight 2243, sections of ExpressJet's InFlight Manual, and ExpressJet documents illustrating symptoms and treatments for burns and how to properly serve hot beverages. (ECF #12, Exhibit 2; ECF #34, Exhibit 2). Continental never stated where these documents came from or how they acquired the documents, although the documents repeatedly referenced ExpressJet d/b/a Continental Express. (ECF #12, Exhibit 2). Continental objected to providing any further documents related to the incident including telephone conversation documents between Plaintiff's son and Continental employee Nancy Tibbits, personnel files for the pilots, any Continental employees onboard the plane but not working, and personnel files relating to the Continental agents present at the gate in Atlanta. (ECF #12, Exhibit 2). Continental admitted that a Continental flight attendant, Ms. Carol Tuschl, was on Flight 2243, but was not acting in an official capacity. (ECF #12, Exhibit 2). In an

October 3, 2008 correspondence between counsels, Continental's counsel stated it would "coordinate with you on a date for the deposition of our flight attendant." (ECF #11, Exhibit 3).

While Continental does appear to employ a strategy of waiting until the statute of limitations has run against the real party in interest before raising its defense that it is the wrong party, *See Chambers v. United States*, 1:06 CV 911, 2006 U.S. Dist. LEXIS 60141, (Dist. Ct., N.D.O.H. Aug. 24, 2006), the evidence in this case demonstrates that Plaintiff had ample reason and opportunity to question the presence or corporate responsibility of ExpressJet. It is a plaintiff's obligation to join all responsible parties and it was apparent from the evidence adduced here that ExpressJet was the entity that operated the flight at issue. At the very least, Plaintiff should have conducted specific discovery toward ascertaining who ExpressJet was and what its relationship to Continental was.[4]  Accordingly, Plaintiff has not established a claim for equitable estoppel. Thus, even assuming that ExpressJet was Continental's agent, Continental, as the principal, may not be held liable for its agent's negligence when the statute of limitations has expired as to the agent. *Comer*, 833 N.E.2d at 718. ("In the absence of the tortfeasor's primary liability, there is no liability that may flow through to the [principal] on an agency theory.").

## CONCLUSION

For the reasons set forth above, Continental's Motion for Summary Judgment (ECF #34) is granted except as to Plaintiff's claims of negligence based upon the actions of the Continental gate agent.

---

[4] While parties are now required to file initial disclosures under this Court's case management order, the case management order in use when this case was filed exempted parties from filing initial disclosures. This case is illustrative of why initial disclosures should be required.

13

IT IS SO ORDERED.

                                                             */s/Donald C. Nugent*  
                                                             DONALD C. NUGENT  
                                                             United States District Judge

DATED: July 23, 2009